UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FRANCISCO LOPEZ and JUAN CARLOS
MENDEZ

                            Plaintiffs,

           v.

KI MOON RESTAURANT CORP. D/B/A PINK
NORI, JESSE TANG, DANNY TANG, and
SHIRLEY TANG,

                          Defendants.

NOT FOR PUBLICATION

**FINDINGS OF FACT**
**AND**
**CONCLUSIONS OF LAW**

17-CV-6078 (LDH) (RLM)

---

LASHANN DEARCY HALL, United States District Judge:

## PRELIMINARY STATEMENT

Plaintiffs initiated this action on October 17, 2017.  (ECF No. 1.)  On November 26,

2018, Plaintiffs requested that the jury trial in this matter be converted to a bench trial.  (ECF No.

37.)  On November 28, 2018, Defendants indicated their consent.  (ECF No. 38.)  Thereafter, a

bench trial was held on December 17, 2018.  At the conclusion of its case-in-chief, Plaintiffs

moved for a directed verdict.  The Court reserved determination on Plaintiffs' motion.

Consistent with the Court's December 17, 2018 Minute Entry and Order, the parties filed

proposed findings of fact and conclusions of law on January 9, 2019.

## ISSUES AND JURISDICTION

The claims before the Court at trial were Plaintiffs Francisco Lopez and Juan Carlos

Mendez's claims arising from Defendants' alleged failure to pay minimum wages, failure to pay

overtime wages, failure to pay spread-of-hours wages, illegal tip retention, failure to provide

wage notice, and failure to provide weekly pay statements pursuant to federal and state law.

Specifically, Mr. Lopez and Mr. Mendez brought claims pursuant to the Fair Labor Standards

Act and New York Labor Law, including the Wage Theft Prevention Act, against Ki Moon

Restaurant Corp., Danny Tang, Jesse Tang, and, Shirley Tang.

The Court's jurisdiction as to Plaintiffs' Fair Labor Standards Act claims was invoked pursuant to 28 U.S.C. § 1331. Jurisdiction as to Plaintiffs' pendant state law claims was invoked pursuant to 28 U.S.C. § 1367.

## CREDIBILITY FINDINGS

As the finder of fact, the Court is entitled to assess the credibility of the witnesses and testimony. On December 17, 2018, the Court heard testimony from Plaintiff Francisco Lopez, Plaintiff Juan Carlos Mendez, Defendant Danny Tang, and Defendant Jesse Tang. Defendant Shirley Tang did not testify. During the trial, the Court stated that it believed both parties suffered from a lack of credibility with respect to their witnesses. (Trial Transcript ("Tr. Tr.") 110:23–111:2.) That said, the Court makes the following credibility findings:

Plaintiff Francisco Lopez: The Court credits the testimony of Francisco Lopez, in part. Mr. Lopez testified that: (1) he was not informed, in writing or otherwise, when he was hired at Ki Moon, how much he would be paid or when he would be paid, Tr. Tr. 12:22–13:2, 13:19–14:3, 26:11; (2) he worked a regular schedule the entire time he worked for Ki Moon which was 11 a.m. to 11 p.m. on Mondays and Tuesdays, 6 p.m. to 11 p.m. on Thursdays, 11 a.m. to 12:00 a.m. on Fridays, Saturdays, and Sundays, and that he was off on Wednesdays, Tr. Tr. 14:4–25; (3) he sometimes worked past 11:00 p.m. cleaning the restaurant; Tr. Tr. 15:3–5; (4) he was not paid time and a half for working shifts that lasted longer than 10 hours, Tr. Tr. 17:20; and (5) he did not get paid overtime for hours worked over forty per week, Tr. Tr. 17:16, 34:2–4. The Court does not credit his testimony that he did not receive pay stubs with his weekly payments, Tr. Tr. 18:10–11, and that he was shown documents that he had to sign when he received payment but he did not know what those documents were because Defendant Danny Tang

covered up the documents except for the signature line and because the documents were presented in English, Tr. Tr. 18:12–19:13, as this testimony was contradicted by what the Court found to be credible testimony from the Defendants.

Plaintiff Juan Carlos Mendez:  The Court credits the testimony of Juan Carlos Mendez, in part.  Mr. Mendez testified that:  (1) he was not informed, in writing or otherwise, when he was hired at Ki Moon, how much he would be paid or when he would be paid, Tr. Tr. 46:23–47:16; (2) he worked a regular schedule while he was employed at Ki Moon, which was 11 a.m. to 11:30 p.m. on Mondays and Tuesdays, 6 p.m. to 11:00 p.m. on Thursdays, 11:30 a.m. to midnight on Fridays and Saturdays, 11:30 a.m. to 11:30 p.m. on Sundays, and that he was off on Wednesdays, Tr. Tr. 47:21–48:24; (3) he only received an envelope containing his cash payment with nothing else inside that envelope, Tr. Tr. 53:2–9; (4) he worked past 11:00 p.m. cleaning the restaurant, Tr. Tr. 48:1–2; (5) he was not paid time and a half for working shifts that lasted longer than 10 hours, Tr. Tr. 52:17; (6) he did not get paid overtime for hours worked over forty a week, Tr. Tr. 52:12–14; (7) but he did receive a copy of his weekly schedule, Tr. Tr. 66:9–12. The Court does not credit his testimony that he was required to sign a document every time he got paid, but he did not know what that document was because Defendant Danny Tang covered up the document except for the signature line, Tr. Tr. 53:10–16; and that he never received a copy of that document, Tr. Tr. 54:10–14.  This testimony was contradicted by the document itself, introduced as Def. Ex. A, and Mr. Mendez's demonstration on cross examination as to how the document was allegedly covered.

Defendant Danny Tang:  The Court credits the testimony of Danny Tang, in part.  Mr. Tang confirmed the hours that Mr. Mendez testified as having worked while employed at Ki Moon.  Tr. Tr. 78:14–24.  Mr. Tang also testified that:  (1) he provided Mr. Mendez a copy of his

weekly pay roll statement, the document that Mr. Mendez purportedly signed, on a weekly basis at the time that he paid Mr. Mendez, Tr. Tr. 83:5–25; and that (2) he did not cover up any portion of the weekly pay roll statement that Mr. Mendez signed, Tr. Tr. 85:8–10.   The Court does not credit his testimony that:  (1) he paid Plaintiffs $10 an hour in 2016 and $11 an hour in 2017, consistent with his understanding of what the minimum wage was for those years, Tr. Tr. 79:17–19, 156:7–18; (2) he paid Plaintiffs time and half for hours worked over forty per week, Tr. Tr. 79:22–24; (3) that Plaintiffs worked the same exact number of hours every single day, Tr. Tr. 89:23–90:3; and (4) that he possessed hard copy payroll records indicating the date on which Mr. Lopez and Mr. Mendez were hired but that those hard copy records "disappeared" from his office, Tr. Tr. 122:13–123:7.  Mr. Tang did not have firsthand knowledge as to when his employees started and ended their shifts.  Tr. Tr. 138:3–7, 146:15–17.

Defendant Jesse Tang: The Court found Jesse Tang credible, but this witness did not offer any facts material to the Court's findings.  For example, Mr. Tang did not know the exact schedules that Plaintiffs worked, Tr. Tr. 166:21–167:1.

## FINDINGS OF FACT

To the extent that any of the findings of fact herein may be deemed conclusions of law, the Court shall also consider them to be conclusions.  Similarly, to the extent that any of the conclusions of law may be deemed findings of fact, the Court shall consider them to be findings. The Court's findings of fact are as follows:

With respect to corporate Defendant Ki Moon Restaurant Corp.:

- Ki Moon is a New York corporation with it principal place of business in Astoria, New York.  (Joint Pretrial Order ("JPTO") Stipulated Facts ¶¶ 2–3, ECF No. 27.)

- Ki Moon operates a Japanese restaurant in Queens, New York under the name "Pink

Nori."  (JPTO Stipulated Facts ¶ 4)

- In 2016 and 2017, Ki Moon had gross annual revenues in excess of $500,000.00. (JPTO Stipulated Facts ¶¶ 5–6)

- Ki Moon uses supplies and materials in the course of its business that were produced outside the state of New York.  (JPTO Stipulated Facts ¶ 7)

- Ki Moon is an "enterprise" as that term is used in the Fair Labor Standards Act. (JPTO Stipulated Facts ¶ 8)

- Ki Moon had approximately 18 employees during all relevant times.  (Tr. Tr. 80:9–11)

- Ki Moon did not have records of the tips Plaintiffs received while working at the restaurant in any given week.  (JPTO Stipulated Facts ¶ 22)

- Ki Moon did not have a time clock for employees to use.  (JPTO Stipulated Facts ¶ 19)

- Ki Moon did not provide written time sheets for employees to use.  (JPTO Stipulated Facts ¶ 19)

- Ki Moon did not maintain accurate records of the actual daily hours that Plaintiffs worked but relied on the assumption that employees generally or basically followed their schedules.  (Tr. Tr. 155:13–22)

With respect to Defendant Danny Tang:

- Danny Tang, whose legal name is Kia Tang, is the general manager of Ki Moon, and has been at all times relevant to this lawsuit.  (JPTO Stipulated Facts ¶ 11)

- Danny Tang has the power to hire and fire employees of Ki Moon, set wages and schedules, and maintain employee records.  (JPTO Stipulated Facts ¶ 12)

- Danny Tang hired Francisco Lopez, set his schedule, and paid him (Tr. Tr. 12:20–21; Tr. Tr. 14:7–8; Tr. Tr. 18:8–9)

- Danny Tang hired Plaintiff Juan Carlos Mendez and set his schedule. (Tr. Tr. 46:21–22, 47:19–20)

- Danny Tang is one of three people with keys to Ki Moon Restaurant. (Tr. Tr. 153:9–10)

- Danny Tang was not present to observe when employees came and left. (Tr. Tr. 137:18–138:7, 146:5–147:4)

- Danny Tang was aware of the minimum wage and overtime obligations imposed by the Fair Labor Standards Act and New York Labor Law at the time Plaintiffs were employed by Ki Moon. (JPTO Stipulated Facts ¶ 20)

<u>With respect to Defendant Jesse Tang</u>:

- Jesse Tang is the owner of Ki Moon, and has been at all times relevant to this lawsuit. (JPTO Stipulated Facts ¶ 9)

- Jesse Tang is also the president of Ki Moon, and has been at all times relevant to this lawsuit. (Tr. Tr. 98:8–10)

- Jesse Tang has the power to hire and fire employees of Ki Moon, set wages and schedules, and maintain their records. (JPTO Stipulated Facts ¶ 10)

- Jesse Tang delegated the power to hire and fire to defendant Danny Tang. (Tr. Tr. 118:14–120:1)

- Jesse Tang does not have knowledge of the information that goes into the employees' payroll records. (Tr. Tr. 163:1–164:24)

- Jesse Tang is one of three people with keys to Ki Moon Restaurant. (Tr. Tr. 153:9–

10)

As to Defendant Shirley Tang:

- Shirley Tang is the wife of Danny Tang and the mother of Jesse Tang. (Tr. Tr. 11:21–12:4, 45:23–24, 46:16–17)

- Shirley Tang is one of three people with keys to Ki Moon Restaurant. (Tr. Tr. 153:9–10)

- Shirley Tang supervised employees and gave them instructions. (Tr. Tr. 11:18–22, 45:19–22, 46:16–20)

- Shirley Tang was responsible for paying plaintiffs their tips. (Tr. Tr. 22:6–7, Tr. Tr. 55:16–21)

- Plaintiffs testified to these facts and their testimony went unrebutted, as Defendants did not call Shirley Tang as a witness.

As to Plaintiff Francisco Lopez:

- Francisco Lopez was employed by Ki Moon Restaurant in the State of New York as a delivery person and kitchen helper. (JPTO Stipulated Facts ¶¶ 13–14)

- Francisco Lopez worked for Ki Moon Restaurant continuously from June 5, 2016, through September 29, 2017. (Tr. Tr. 10:13.)

- Defendants do not have any records showing the start or end dates of Francisco Lopez's employment. (Tr. Tr. 124:17–125:2)

- Francisco Lopez worked a regular schedule during his employment at Ki Moon Restaurant. (Tr. Tr. 14:4–6)

- Francisco Lopez had to work at least half an hour longer than his regularly scheduled hours each day to help clean the restaurant after it closed. (Tr. Tr. 15:3–16:4)

- That as part of his set schedule, Mr. Lopez was allotted a 30-minute lunch /dinner (15 minutes for lunch, 15 minutes for dinner) break and an hour off every afternoon.  (Tr. Tr. 85:22–86:1)

- But that Defendants have no records of when Francisco Lopez actually took breaks.  (Tr. Tr. 140:24–141:16).  Indeed, both Plaintiffs testified that they did not receive any breaks.  The Court finds Plaintiffs' testimony extraordinary.  Nonetheless, the Court cannot assume that Plaintiffs took breaks without accurate records from Defendants.

- Francisco Lopez testified regularly worked "roughly 70 hours per week."  The Court finds, based on Mr. Lopez's testimony, that he worked 68 hours per week.  The Court arrives at this number by adding the number of hours he testified working each day of the week.  (Tr. Tr. 14:9–16:4).

- Francisco Lopez was paid a weekly salary for his work at Ki Moon Restaurant. (Tr. Tr. 13:5–6, 17:2–13)

- Francisco Lopez was paid a flat salary of $300 per week. (Tr. Tr. 13:5–6)

- Francisco Lopez was paid in cash.  (JPTO Stipulated Facts ¶ 18)

- Francisco Lopez was not paid "time and a half" at any point during his employment with Defendants.  (Tr. Tr. 17:14–20)

- Francisco Lopez was not paid a "spread of hours" premium by defendants at any point during his employment with defendants.  (Tr. Tr. 17:21–23; Defs.' Prop. Find. Fact. Concl. L. at 7, ECF No. 43.)

- When Francisco Lopez was paid, Defendants presented him with a paystub, which Mr. Lopez signed, indicating the amount paid and hours worked per week.  (Tr. Tr. 18:12–19:10; 84:18–85:2.)

- Francisco Lopez received tips during his employment at Ki Moon Restaurant, averaging an estimated $80 per day.  (Tr. Tr. 19:14–18)

- Francisco Lopez participated in a tip pool with the other delivery people at Ki Moon Restaurant, including Plaintiff Juan Carlos Mendez, for tips left on credit cards. (JPTO Stipulated Facts ¶ 21; Tr. Tr. 20:3–7)

- Francisco Lopez was never provided with a written wage notice describing his regular and overtime rates of pay, his regular paydays, allowances, the regular pay day, and the name and contact information of the employer.  (JPTO Stipulated Facts ¶ 23; Tr. Tr. 13:19–24)

As to Plaintiff Juan Carlos Mendez:

- Juan Carlos Mendez was employed by Ki Moon Restaurant in the State of New York. as a delivery person and kitchen helper.  (JPTO Stipulated Facts ¶¶ 13–14)

- Juan Carlos Mendez worked for Ki Moon Restaurant from March 2016 through February 2017.  He took an approximate one month off in March 2017 and then resumed working in April 2017 until July of that same year.  (JPTO Stipulated Facts ¶¶ 16–17; Tr. Tr. 43:23)

- Defendants do not have records showing the start or end dates of Juan Carlos Mendez's employment.  (Tr. Tr. 124:17–125:2, 125:12–16)

- Juan Carlos Mendez worked a regular schedule during his employment at Ki Moon Restaurant. (Tr. Tr. 47:17–18)

- Juan Carlos Mendez's regular schedule was from 11:30 a.m. to 11:30 p.m. on Sunday, Monday, and Tuesday; 6:00 p.m. to 11:00 p.m. on Thursday, and 11:30 a.m. to midnight on Friday and Saturday.  (Tr. Tr. 47:21–48:24)

- Juan Carlos Mendez had to work at least half an hour longer than his regularly scheduled hours each day to help clean the restaurant after it closed. (Tr. Tr. 48:1–2, 48:16–22)

- That as part of his set schedule, Mr. Mendez was allotted a 30-minute dinner break and an hour off every afternoon. (Def. Ex. A.; Tr. Tr. 85:22–86:1)

- But that Defendants have no records of when Juan Carlos Mendez actually took breaks. (Tr. Tr. 140:24–141:16). For the reasons stated earlier, the Court cannot conclude any breaks were taken without accurate records.

- Juan Carlos Mendez regularly worked roughly 67.5 hours per week. The Court concludes this based on adding the number of hours Mr. Mendez testified to working each day. (Tr. Tr. 47:21–49:7)

- Juan Carlos Mendez was paid a flat salary of $300 per week at Ki Moon Restaurant, but after five or six months received a $20 raise to $320 per week. (Tr. Tr. 51:17–52:3, 72:9–11)

- Juan Carlos Mendez was paid in cash. (JPTO Stipulated Facts ¶ 18)

- Juan Carlos Mendez was not paid "time and a half" by Defendants at any point during his employment with defendants. (Tr. Tr. 52:12–14)

- Juan Carlos Mendez was not paid a "spread of hours" premium by Defendants at any point during his employment with defendants. (Tr. Tr. 52:15–17)

- When Juan Carlos Mendez was paid, Defendants presented him with a paystub, which he signed, indicating the amount paid and hours worked. (Tr. Tr. 53:10–25; 84:18–24.)

- The documents signed by Juan Carlos Mendez did not accurately reflect his actual

hours worked but were based on assumptions about him following a schedule. (Tr. Tr. 86:2–87:1, 89:3–90:18, 155:13–22).  The Court indicated at trial that even if it were to accept Def. Ex. A outside of the purposes of impeachment, that it did not find the documents particularly helpful as an accurate recordation of the hours worked because they expressed the exact same number of hours every single week, which to the Court, defies logic that this could be the case.

- Juan Carlos Mendez participated in a tip pool with the other delivery people at Ki Moon Restaurant for tips left on credit cards.  (JPTO Stipulated Facts ¶ 21; 55:16–19)

- Juan Carlos Mendez received tips during his employment at Ki Moon Restaurant, averaging roughly $90–100 per day.  (Tr. Tr. 54:15–23)

- Juan Carlos Mendez was never provided with a written wage notice describing his regular and overtime rates of pay, his regular paydays, allowances, the regular pay day, and the name and contact information of the employer, and was not asked to sign same.  (JPTO Stipulated Facts ¶ 23)

## CONCLUSIONS OF LAW

Fair Labor Standards Act

- Under the Fair Labor Standards Act, an "employer" is "any person who acts directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

- An "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1).

- There is no dispute that Defendants are employers and Plaintiffs are employees within the meaning of the Fair Labor Standards Act. The Court finds that they are.[1]

---

[1] Defendants originally contested that Shirley Tang was Plaintiffs' employer within the meaning of the applicable statutes.  However, in Defendants' proposed findings of fact, they included that "Defendant Shirley Tang also works at the restaurant performing miscellaneous duties such as cashier and *supervision*," and in their proposed

<u>Failure to pay minimum wage & Failure to pay overtime wages</u>:

o   Plaintiffs are entitled to the federal minimum wage of $7.25 for every hour worked.  29 U.S.C. § 206(a).  Plaintiffs are also entitled to one and one-half times the regular rate of pay for every hour worked in excess of forty hours each week.  29 U.S.C. § 207(a)(1).

o   To recover under Fair Labor Standards Act, a plaintiff must present evidence of the hours he worked and the insufficiency of the payments he received.  However, it is the responsibility of employers to make and maintain and preserve records of employees' wages, hours, and conditions of their employment.  This includes total daily and weekly hours worked, total daily and weekly earnings, and total weekly premium for overtime hours.  29 C.F.R. §§ 516.2, 516.5, 516.28; 12 N.Y.C.R.R. § 146-2.1

o   When a defendant in a suit for lost wages fails to maintain such employment records, an employee may submit sufficient evidence from which violations of the statute and the amount of an award may be reasonably inferred.  The Supreme Court explained in *Anderson v. Mt. Clemens Pottery Co*. that where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated, and produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946).  In the absence of documentary evidence, an employee

---

conclusions of law, they included that "Defendants are employers under FLSA."  (Defs.' Find. Fact Concl. L. at 5–6.)

can meet this burden by relying on his recollection alone.[2]  The burden then shifts

to the employer to come forward with evidence of the precise amount of work

performed or with evidence to negate the reasonableness of the inference to be

drawn from the employee's evidence.  *Id.* If the employer fails to produce such

evidence, the court may then award damages to the employee, even though the

result may be only approximate.  *Cao v. Chandara Corp.*, No. 00-CIV-8057, 2001

WL 34366628, at *4 (S.D.N.Y. July 25, 2001).

- Defendants failed to maintain accurate records regarding, *inter alia*, Plaintiffs' daily and weekly hours worked required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

- Plaintiffs Francisco Lopez and Juan Carolos Mendez have met their burden of proving hours worked "as a matter of just and reasonable inference" in the absence of records maintained by Defendants.  *See Anderson.*, 328 U.S. at 687; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011).

- Defendants violated the minimum wage provisions of the Fair Labor Standards Act with respect to Plaintiffs Francisco Lopez and Juan Carlos Mendez by paying them less than the statutory minimum wage of $7.25 per hour throughout their employment.  29 U.S.C. § 206.

- Defendants violated the overtime provisions of the Fair Labor Standards Act with respect to Plaintiff Francisco Lopez by failing to pay him the one

---

[2] *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (stating that where a defendant fails to produce admissible records of the hours a plaintiff worked, a plaintiff may meet his burden of producing sufficient evidence by relying on his recollection alone.)

13

and a half-time premium above his regular rate (the minimum wage) for the 28 hours he worked each week in excess of 40 hours. 29 U.S.C. § 207(a)(1).

- Defendants violated the overtime provisions of the Fair Labor Standards Act with respect to Plaintiff Juan Carlos Mendez by failing to pay him the one and a half-time premium above his regular rate (the minimum wage) for the 27.5 hours he worked each week in excess of 40 hours. 29 U.S.C. § 207(a)(1).

- A willful violation of the Fair Labor Standards Act is one where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).

- Defendants have not met their burden of showing that their violations of the Fair Labor Standards Act were in good faith. It was stipulated that Defendant Danny Tang was aware of the minimum wage and overtime obligations imposed by the Fair Labor Standards Act and New York Labor Law at the time Plaintiffs were employed. (JPTO Stipulated Facts ¶ 20.) In their proposed findings of fact and conclusions of law, Defendants did not cite to any testimony supporting a finding a good faith.[3] Indeed, the Court finds none.

- Plaintiffs, as the prevailing parties, are entitled to an award of reasonable attorneys' fees and costs under the Fair Labor Standards Act. 29 U.S.C. §

---

[3] Defendant cite to Tr. 96:8, but there is no testimony at this citation due to the page break that accounts for the side bar.

216(b).

New York Labor Law

- There is no dispute that Defendants are employers and Plaintiffs are employees within the meaning of New York Labor Law.

- District courts in this Circuit have interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the Fair Labor Standards Act. *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 236 n. 17 (S.D.N.Y.2002)).

- Under New York Labor Law, an "employee" is "any person employed by an employer in any employment." N.Y. Lab. L. §§ 190(2).

  Failure to pay minimum wage & Failure to pay overtime wages:

  o Between December 31, 2015 and December 30, 2016, the New York State minimum wage was $9.00 per hour. (JPTO Stipulated Facts ¶ 16.) Between December 31, 2016, and December 30, 2017, the New York State minimum wage for hospitality industry employees in New York City working for employers with 11 or more employees was $11.00 per hour. (JPTO Stipulated Facts ¶ 17.)

  o Employees are entitled to the statutory minimum wage for every hour worked. N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 146-1.1(a).

  o New York state law requires that employers pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage," for any workday exceeding ten hours, measured from start to finish. 12 N.Y.C.R.R. § 146-1.6.

  o Employees are entitled to one and one-half times the regular rate of pay for every hour worked in excess of forty hours each week. 12 N.Y.C.R.R. § 146-1.4

- Courts in this Circuit have applied the Supreme Court's holding in *Anderson* to suits under New York Labor Law, holding that if an employer fails to maintain proper records, the extent of the underpayment may be proved by other evidence, including the employee's testimony. *See, e.g.*, *Brown v. Tomcat Elec. Sec., Inc.*, 03-CV-5175, (FB) (JO), 2007 WL 2461823, at *6 (E.D.N.Y. Aug. 27, 2007).
    - Plaintiffs Francisco Lopez and Juan Carlos Mendez have met their burden of proving hours worked "as a matter of just and reasonable inference" in the absence of [accurate] records maintained by Defendants. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011).
    - Defendants have failed to meet their "more demanding" burden under New York Labor Law of proving that they properly paid Plaintiffs all the wages, benefits, and supplements owed to them. *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017).
    - Defendants violated the minimum wage provisions of New York Labor Law with respect to Plaintiff Francisco Lopez by paying him an effective regular rate less than the statutory minimum wage of $9.00 per hour in 2016. 12 N.Y.C.R.R. § 146-1.1. Mr. Lopez testified that he was paid $300 a week. At a minimum, for 68 hours a week of work, Mr. Lopez would have had to have been paid $612 a week in 2016 ($9.00 an hour x 68 hours per week).
    - Defendants violated the minimum wage provisions of New York Labor Law with respect to Plaintiff Francisco Lopez by paying him an effective

16

regular rate less than the statutory minimum wage of $11.00 per hour in 2017. 12 N.Y.C.R.R. § 146-1.1. At a minimum, Mr. Lopez would have had to been paid $748 a week in 2017. ($11.00 an hour x 68 hours per week)

- Defendants violated the minimum wage provisions of New York Labor Law with respect to Plaintiff Juan Carlos Mendez by paying him an effective regular rate less than the statutory minimum wage of $9.00 per hour in 2016. 12 N.Y.C.R.R. § 146-1.1. Mr. Mendez testified that he was paid $300 per week, but after five or six months he was paid a $320 per week. At a minimum, Mr. Mendez would have had to been paid $607.50 per week for 67.5 hours worked per week in 2016 until he received his raise.

- Defendants violated the minimum wage provisions of New York Labor Law with respect to Plaintiff Juan Carlos Mendez by paying him an effective regular rate less than the statutory minimum wage of $11.00 per hour in 2017. 12 N.Y.C.R.R. § 146-1.1. At a minimum, Mr. Mendez would have had to have been paid $742.50 per week for 67.5 worked per week in 2017.

- Defendants violated the overtime provisions of New York Labor Law with respect to Plaintiff Francisco Lopez by failing to pay him time-and-one-half his regular rate (the minimum wage) for the 28 hours he worked each week in excess of 40 hours. 12 N.Y.C.R.R. §§ 146-1.3, 146-3.5(b).

- Defendants violated the overtime provisions of New York Labor Law with

respect to Plaintiff Juan Carlos Mendez by failing to pay him time-and-one-half his regular rate (the minimum wage) for the 27.5 hours he worked each week in excess of 40 hours. 12 N.Y.C.R.R. §§ 146-1.3, 146-3.5(b).

Failure to pay spread of hours:

- Defendants violated the "spread of hours" provisions of the New York Labor Law with respect to Plaintiff Francisco Lopez by failing to pay him one hour's premium pay at the minimum wage for each day he worked shifts lasting longer than ten hours from start to finish. 12 N.Y.C.R.R. § 146-1.6.

Illegal tip retention:

- New York Labor Law § 196-d prohibits any employer from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee." This [provision, law, section,] bars an employer from "retaining for themselves any portion of employees' tips, regardless of whether the employer takes a tip credit." *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *17 (S.D.N.Y. Feb. 1, 2007)

- The Court finds that Defendants retained 7.5% of the tips before distributing Plaintiffs' share to them. Defendants testified that there was a 3% surcharge on credit card payments imposed by the credit card company. (Tr. Tr. 100:7–16). However, no documentary evidence to this effect was presented.

- In New York, when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company. N.Y. Comp. Codes R. &

Regs. tit. 12, § 146-2.20.

Failure to provide wage notice:

- An employer is required to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" certain information, including "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day," as well as contact information for the employer. N.Y. Lab. L. §195(1). In addition, the employer "shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." *Id*.

- Defendants violated the Wage Theft Prevention Act with respect to plaintiffs because they did not provide plaintiffs with written wage notices upon hiring describing their regular and overtime rates of pay, their regular paydays, allowances, and the name and contact information of the employer, and did not ask plaintiffs to sign the same. As a result, Defendants owe each Plaintiff "damages of fifty dollars for each workday that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. L §§ 195(1), 198(1-b).

Failure to provide weekly pay statements:

- New York Labor Law § 195(3) requires that an employer "furnish each employee

with a statement with every payment of wages, listing the following: the dates of

work covered by that payment of wages; name of employee; name of employer;

address and phone number of employer; rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions; allowances, if any, claimed as part of the minimum

wage; and net wages." Further, for non-exempt employees, "the statement shall

include the regular hourly rate or rates of pay; the overtime rate or rates of pay;

the number of regular hours worked, and the number of overtime hours worked."

*Id*.

- Defendants violated the Wage Theft Prevention Act with respect to Plaintiffs

  because they did not provide accurate wage statements to Plaintiffs each week

  showing the pay period, his regular and overtime hours worked, regular and

  overtime rates, and allowances claimed. As a result, Defendants owe each

  Plaintiff "two hundred fifty dollars for each workday that the violations occurred

  or continue to occur, but not to exceed a total of five thousand dollars, together

  with costs and reasonable attorney's fees." *Id*.

### DAMAGES

As the Court has found that Ki Moon Restaurant Corp. and the individual defendants

were jointly Plaintiffs' employers, each defendant is jointly and severally liable under the Fair

Labor Standards Act and New York Labor Law for any damages award made in Plaintiffs' favor.

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

**I. Fair Labor Standards Act**

    a. <u>Failure to pay minimum wage & Failure to pay overtime wages</u>

i. As an initial matter, in actions to recover unpaid minimum wages and overtime pay under both the Fair Labor Standards Act and New York Labor Law, plaintiffs may recover under whichever statute provides the greater relief. *Xochimitl v. Pita Grill of Hell's Kitchen, Inc*., 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016) (collecting cases), *adopted by* 2016 WL 6879258, at *1 (S.D.N.Y. Nov. 21, 2016).

ii. Because the state minimum wage is higher than the federal minimum wage, Plaintiffs are only entitled to recover under New York Labor Law because that statute effectively provides the greater relief in this instance. Therefore, a damages calculation under the Fair Labor Standards Act is unnecessary.

## II. New York Labor Law

### a. Failure to pay minimum wage

i. Under New York Labor Law, for 2016 Defendants owe Plaintiff Francisco Lopez the difference between the minimum wage of $9.00 and the $7.50 per hour that was his effective minimum wage for his first forty hours of work per week, as computed pursuant to 12 N.Y.C.R.R. § 146-3.5(b). The Court reaches an effective minimum wage of $7.50 by taking the $300 a week Mr. Lopez testified as having been paid and dividing it by 40 hours. The difference between $9.00 and $7.50 is $1.50. Therefore, for the 1,200 non-overtime hours that Mr. Lopez worked between June 5, 2016 and December 31, 2016, **the total is $1,800**. ($1.50 x 40 hours per week x 30 weeks)

ii. Under New York Labor Law, for 2017 Defendants owe Plaintiff Francisco

Lopez the difference between the minimum wage of $11.00 and the $7.50 per hour that was his effective minimum wage for his first forty hours of work per week, as computed pursuant to 12 N.Y.C.R.R. § 146-3.5(b). The difference between $11.00 and $7.50 is $3.50. Therefore, for the 1,560 non-overtime hours that Mr. Lopez worked between Jan. 1, 2017 and Sept. 29, 2017, **the total is $5,460**. ($3.50 x 40 hours per week x 39 weeks)

iii. Under New York Labor Law, from March 1, 2016 through July 31, 2016[4], Defendants owe Plaintiff Juan Carlos Mendez the difference between the minimum wage of $9.00 and the $7.50 per hour that was his effective minimum wage for his first forty hours of work per week, as computed by pursuant to the statute (12 N.Y.C.R.R. § 146-3.5(b)). The Court reaches an effective minimum wage of $7.50 by taking the $300 a week Mr. Mendez testified as having been paid and dividing it by 40 hours. The difference between $9.00 and $7.50 is $1.50. Therefore, for the 840 non-overtime hours that Mr. Mendez worked between March 6, 2016 and July 31, 2016, **the total is $1,260** ($1.50 x 40 hours per week x 21 weeks).

iv. Under New York Labor Law, from August 2016 through December 2016, Defendants owe Plaintiff Juan Carlos Mendez the difference between the minimum wage of $9.00 and the $8.00 per hour that was his effective minimum wage for his first forty hours of work per week, as computed pursuant to the statute (12 N.Y.C.R.R. § 146-3.5(b)). The Court reaches an

---

[4] Mr. Mendez testified that he began work in March 2016, ended in February 2017, resumed in April 2017, and ended in July 2017. He could not remember the exact dates of the months, so the Court assumes March 6, 2016–Feb. 26, 2017 and April 2, 2017–July 30, 2017.

effective minimum wage of $8.00 by taking the $320 a week Mr. Mendez testified as having been paid and dividing it by 40 hours. The difference between $9.00 and $8.00 is $1.00. Therefore, for the 880 non-overtime hours that Mr. Mendez worked between August 2016 and December 2016, **the total is $880**. ($1.00 x 40 hours per week x 22 weeks).

    v. Under New York Labor Law, for 2017 Defendants owe Plaintiff Juan Carlos Mendez the difference between the minimum wage of $11.00 and the $8.00 per hour that was his effective minimum wage for his first forty hours of work per week, as computed pursuant to 12 N.Y.C.R.R. § 146-3.5(b). The difference between $11.00 and $8.00 is $3.00. Therefore, for the 1,020 non-overtime hours that Mr. Mendez worked between January 2017 through the end of February 2017 and April 2017 through the end of July 2017, **the total is $3,060** ($3.00 x 40 hours per week x 25.5 weeks).

b. <u>Failure to pay overtime wages</u>

    i. Under New York Labor Law, for 2016, Defendants owe Plaintiff Francisco Lopez wages for the 28 hours of overtime he worked each week. At a rate of $9.00 an hour for 30 weeks, **the total is $7,560** ($9.00 x 28 hours per week x 30 weeks).

    ii. Under New York Labor Law, for 2017, Defendants owe Plaintiff Francisco Lopez wages for the 28 hours of overtime he worked each week. At a rate of $11.00 per hour for 39 weeks, **the total is $12,012** ($11.00 x 28 hours per week x 39 weeks).

    iii. Under New York Labor Law, for 2016, Defendants owe Plaintiff Juan

Carlos Mendez wages for the 27.5 hours of overtime that he worked each week. At a rate of $9.00 per hour for 43 weeks, **the total is $10,642.50** ($9.00 x 27.5 hours per week x 43 weeks)

iv. Under New York Labor Law, for 2017, Defendants owe Plaintiff Juan Carlos Mendez wages for the 27.5 hours of overtime that he worked each week. At a rate of $11.00 per hour for 25.5 weeks, **the total is $7,713.75**. ($11.00 x 27.5 hours per week x 25.5 weeks).

c. <u>Failure to provide wage notice</u>

i. An employer who fails to provide a wage notice pursuant to New York Labor Law 195(1) is liable for "damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. L. § 198(1-b).

ii. Defendants **owe Plaintiffs each $5,000** because based on the calculation using the number of workdays, the total would exceed $5,000.

d. <u>Failure to provide weekly pay statements</u>

i. An employer who fails to provide a paystub pursuant to New York Labor Law § 195(3) is liable for "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. L. § 198(1-d).

ii. Although the Court finds that Plaintiffs provided were provided with these records, they were not entirely accurate. Defendants **owe Plaintiffs each**

**$5,000** because based on the calculation using the number of workdays, the total would exceed $5,000.

    e. <u>Prejudgment Interest</u>

        i. Generally, Plaintiffs are entitled to prejudgment interest on their claims under New York Labor Law. *Oaxaca v. Hudson Side Cafe Inc.*, 2018 WL 4859152, at *11 (E.D.N.Y. Oct. 8, 2018). However, as the Court discusses below, this is not the case when Plaintiffs are awarded liquidated damages.

**III.    Liquidated Damages**

    a. Under the New York Labor Law, an employee is entitled to liquidated damages equal to 100% of his unpaid wages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1-a).

    b. However, an employee cannot recover liquidated damages for the same injuries under both New York Labor Law and the Fair Labor Standards Act. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. App'x. 59, 61 (2d Cir. 2016).

    c. An employer may avoid liquidated damages only if it meets the burden "of establishing, by 'plain and substantial' evidence, its subjective good faith and objective reasonableness." *Reich v. S New. Eng. Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

    d. Defendants owe liquidated damages for their failure to pay overtime and minimum wages because Defendants have not met their burden of demonstrating good-faith. Therefore, Plaintiffs are not entitled to prejudgment interest.

    e. Because New York Labor Law provides the greater form of relief, the Court

imposes liquidated damages as to Plaintiffs' New York Labor Law claims only.

IV.     The Court therefore modifies the damages calculations included in the JPTO as follows:

    a. <u>Francisco Lopez</u>

        i. Failure to pay minimum wage under the Fair Labor Standards Act: **$0**

        ii. Failure to pay overtime wages under the Fair Labor Standards Act: **$0**

        iii. Failure to pay minimum wages for 2016 and 2017 under New York Labor Law: **$14,520**

            1. $7,260 (actual)

            2. $7,260 (liquidated)

        iv. Failure to pay overtime wages for 2016 and 2017 under New York Labor Law: **$39,144**

            1. $19,572 (actual)

            2. $19,572 (liquidated)

        v. Failure to pay spread of hours: Though Plaintiffs are entitled to some of relief, the Court is unable to determine damages because Plaintiffs did not provide a damages calculation. New York Labor Law requires one hour's premium pay at the minimum wage for each day Mr. Lopez worked shifts lasting longer than ten hours from start to finish. 12 N.Y.C.R.R. § 146-1.6. The record before the Court is insufficient to determine how many days Mr. Lopez worked shifts lasting longer than ten hours. The JTPO provides $3,345.00 for actual and 3,345.00 for liquidated damages with no calculation. Plaintiffs' are directed to file a damages calculation in this regard within 30 days. Any facts used to support that calculation must

comport with this Court's findings of facts.

vi. Illegal tip retention: Though Plaintiffs are entitled to some form of relief, the Court is unable to determine damages because Plaintiffs did not provide a damages calculation. Francisco Lopez testified that he received tips averaging an estimated $80 per day but did not specify how much of his tips were paid in cash versus via credit card. He simply testified that "most of the tips he received were via credit card." (Tr. Tr. 19:21.) The Court has no way to determine how much 7.5% of retained tips amounts to. Plaintiffs' are directed to file a damages calculation in this regard within 30 days. Likewise, the Court affords Defendants the opportunity to provide any evidence to substantiate their claim that only a 3% surcharge, imposed by the credit card companies, was deducted from Plaintiff's tips. Defendants should provide this evidence to Plaintiffs in advance of any submission to the Court. Any facts used to support that calculation must comport with this Court's findings of facts.

vii. Failure to provide wage notice: **$5,000**

viii. Failure to provide paystubs: **$5,000**

ix. **TOTAL: $63,664**

b. <u>Juan Carlos Mendez</u>

i. Failure to pay minimum wage under the Fair Labor Standards Act: **$0**

ii. Failure to pay overtime wages under the Fair Labor Standards Act: **$0**

iii. Failure to pay minimum wages under New York Labor Law: **$10,400**

1. $5,200.00 (actual)

   2. $5,200.00 (liquidated)

 iv. Failure to pay overtime wages under New York Labor Law: **$36,712.50**

   1. $18,356.00 (actual)

   2. $18,356.00 (liquidated)

 v. Failure to pay spread of hours: Though Plaintiffs are entitled to some of relief, the Court is unable to determine damages because Plaintiffs did not provide a damages calculation. New York Labor Law requires one hour's premium pay at the minimum wage for each day Mr. Mendez worked shifts lasting longer than ten hours from start to finish. 12 N.Y.C.R.R. § 146-1.6. The record before the Court is insufficient to determine how many days Mr. Mendez worked shifts lasting longer than ten hours. The JPTO provides $3,000.00 for actual and 3,000.00 for liquidated damages with no calculation. Plaintiffs' are directed to file a damages calculation in this regard within 30 days. Any facts used to support that calculation must comport with this Court's findings of facts.

 vi. Illegal tip retention: Again, the Court is unable to determine damages because Plaintiffs did not provide a damages calculation. Juan Carlos Mendez testified that he received tips averaging an estimated $90–100 per day but did not specify how much of his tips were paid in cash versus via credit card. He merely testified that the "majority" of his tips were received via credit card. (Tr. Tr. 55:8.) Likewise, the Court affords Defendants the opportunity to provide any evidence to substantiate their claim that only a 3% surcharge, imposed by the credit card companies, was deducted from

Plaintiff's tips. Defendants should provide this evidence to Plaintiffs in advance of any submission to the Court. Any facts used to support that calculation must comport with this Court's findings of facts.

    vii.  Failure to provide wage notice: **$5,000.00**

    viii.  Failure to provide paystubs: **$5,000**

    ix.  **TOTAL: $57,112.50**

## V.    Attorneys' Fees

a. Successful plaintiffs are also entitled to recover reasonable attorneys' fees and costs against defendants for their violations of the minimum wage and overtime provisions of the Fair Labor Standards Act and New York Labor Law. 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1).

b. Plaintiffs are directed to file a memorandum with the Court outlining their request, if any, for attorneys' fees within 30 days.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have met their burden of proof with respect to the following claims: failure to pay minimum wage under the Fair Labor Standards Act and New York Labor Law; failure to pay overtime wages under the Fair Labor Standards Act and New York Labor Law; failure to pay spread of hours under New York Labor Law; failure to provide wage notice under New York Labor Law; and illegal tip retention under New York Labor Law; and failure to provide pay stubs under New York Labor Law insofar as the pay stubs presented to Plaintiffs were not entirely accurate.

SO ORDERED.

Dated: Brooklyn, New York
      May 15, 2020

/s/ LDH
LASHANN DEARCY HALL
United States District Judge